UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

|  |  |  |
|---|---|---|
| WILLIAM H. MOORE and MARYANN HYSLER, | ) ) ) | HON. JOSE L. LINARES, U.S.D.J. |
| Plaintiffs, | ) ) | Civil Action No. 05-CV-2179(JLL) |
| v. | ) ) | |
| DEVON BROWN, et al., | ) ) ) | |
| Defendants. | ) ) | **STATEMENT OF MATERIAL FACTS** DOCUMENT ELECTRONICALLY FILED |

Pursuant to L.R.Civ.P. 56.1, defendants provide the following statement of material facts not in dispute.

1. Plaintiff William Moore is an involuntary committee under New Jersey's Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27:24, et seq. and is confined at the Special Treatment Unit ("STU") in Avenel, New Jersey for care and treatment.

2. Moore has a long history of sexually deviant and criminal behavior. The history of his sexual predations was succinctly summarized by the Appellate Division of the New Jersey Superior Court as follows:

> At age ten, [Moore] began sexually molesting his sister, age eight. The sexual behavior continued for four years and included cunnilingus, digital penetration, and manual stimulation of the child's breasts and clitoris. At age seventeen, [Moore] sexually molested his half-sister, age three. He exposed his penis and had her 'touch it and kiss it.' At age forty [Moore] digitally stimulated the clitoris of his niece, age three. At age forty-two, [Moore] began

> sexually molesting his step-daughter, D.C., age ten. The sexual assaults of D.C. continued for about four years, with thirty to fifty separate encounters, and included sexual penetration, cunnilingus, and fellatio.
>
> [Certification of David L. DaCosta, Exhibit A, p. 4][1]

3. Moore was arrested in 1993 for his crimes against D.C. and charged with aggravated sexual assault. In 1994, he pled guilty to one count of second degree sexual assault and was sentenced to eight years at the Adult Diagnositic and Treatment Center. According to the Appellate Division:

> During this incarceration, he took a Bible College correspondence course and proclaimed himself a 'Born-Again Christian.' He read scripture, studied texts concerning the New Testament, and participated in numerous study courses by mail. [Moore] refused therapy from non-born-again therapists because the therapy was 'ungodly.' [Moore] was on treatment refusal status for most of his time at ADTC.
>
> [Exhibit A, pp. 4-5]

4. In 1999, Moore was civilly committed to the Ann Klein Forensic Center (AKFC) under the general civil commitment statute since the SVPA was not yet in force. Exhibit A, p. 5. Moore continued to refuse to participate in group therapy or relapse prevention therapy on the basis of his religious convictions. Ibid.

5. In 2000, the State filed a petition under the SVPA to have Moore committed as a sexually violent predator. Following a

---

[1]All references hereinafter to Exhibits refer to the exhibits attached to the Certification of David L. DaCosta.

hearing, Moore was committed and did not appeal.  Ibid.

6.   At Moore's annual review of commitment hearing in July 2001, presided over by the Honorable Serena Perretti, J.S.C., Moore complained, inter alia, that he refused treatment because the available treatment contravened his religious beliefs.  Exhibit A, p. 3.  Following a hearing at which witnesses for the State and Moore testified, Judge Perretti concluded that the State had proved by clear and convincing evidence that Moore remained a dangerous sexually violent predator.  Exhibit A, p. 10.

7.   With respect to Moore's complaint about the unavailability of "Christian" therapy, Judge Perretti noted that Moore's argument, although "couched in the verbiage of religious liberty [is] actually a challenge to the nature of the treatment which is afforded. ..."  Ibid.

> The judge found [Moore's] religious freedom argument 'immaterial' because '[n]o one is attempting to force [Moore] to do what he doesn't wish to do.'  The judge observed that a patient has a right to refuse mental health treatment and to worship as he chooses, and [Moore] was not deprived of those rights.  The judge concluded: '[Moore] is simply holding to his religious beliefs by refusing a particular form of non-invasive  treatment . . . . And the State doesn't have to show that it is the preferred treatment; the State doesn't have to show that it is the exclusive treatment, merely that it is an adequate standard treatment.
>
> [Exhibit A, pp. 11-12]

8.   Moore appealed the judgment of commitment.  While his appeal was pending, on January 2, 2003, the Appellate Division

remanded the case for further consideration in light of a recently decided New Jersey Supreme Court case on the burden of proof. Exhibit A, p. 12. The Appellate Division noted that although Moore had had the opportunity since the hearing to obtain "supplementary counseling" from an outside source at his expense, he had not done so and continued to refuse to participate in the regular treatment program. Ibid.

9.    Following remand, Judge Perretti again concluded that the State had met its burden and recommitted Moore.  Moore then appealed to the Appellate Division raising the same religious freedom claim that he raises in his federal complaint.

10.    The Appellate Division rejected his claim in an unpublished decision dated April 5, 2004, attached hereto as Exhibit A.  Moore's petition to the New Jersey Supreme Court for certification was denied on June 30, 2004 [Exhibit B].

### Related  Litigation

11.    On March 9, 2001, prior to the filing of the within matter, a Summons and Complaint seeking class action was issued in Raymond Alves v. Ferguson, et al., bearing Civil Action No. 01-0789(DMC). This complaint sought class action status and alleged unconstitutional conditions of confinement in the Special Treatment Unit which houses sexually violent predators in Kearney, New Jersey, as well as unconstitutional sex offender treatment.

12.    The instant matter was filed on April 21, 2005.  The first three counts of the complaint mirrored claims made in the

Alves case. In Count 4 of the complaint, plaintiff Moore claims that his right to free exercise of religion is being violated by defendants' failing to provide him with treatment consistent with his religious beliefs. In Count 5 of the complaint, both plaintiffs claim that defendants have violated their right to marry by denying them permission to do so.

13. Following further procedural events not here relevant, the treatment related claims in the instant matter were consolidated with Alves and defendants filed a motion to dismiss with respect to those claims unique to plaintiffs Moore and Hysler, viz, their religious freedom and right to marry claims. That motion was never ruled upon.

14. After the Alves matter was settled, on March 26, 2013, Judge Falk entered an Order severing counts 4 and 5 from Alves and reinstated them to the active docket [ECF No. 35]. On March 28, 2013, this court entered an Order that defendants renew their motion to dismiss by April 26, 2013.

15. During the time that this case has been pending, Moore began participating in treatment offered by the STU. A report by the Treatment Progress Review Committee dated January 14, 2013, noted that Moore has been participating in the treatment program offered by defendants for for the last two years. Exhibit F, p. 5. Not only has he participated in treatment gaining promotion to phase 4 or a five phase treatment program, but "with optimal engagement in treatment and barring any concerns that may arise in

the next year, he is likely to be considered for Phase 5, de-escalation of restraints, in a years time." Ex. F, pp.1, 15.

16.  When defendants filed their original dispositive motion in 2006, they provided a blue print for how plaintiffs could obtain a marriage license and be married. Plaintiffs did nothing with this information.

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY


By:    s/ *David L. DaCosta*
David L. DaCosta
Deputy Attorney General

Dated: April 25, 2013